Case No. 15-CV-05094

---

## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS

---

LEMIRE SCHMEGLAR,

Plaintiff-Appellant,

v.

WELLS FARGO BANK, N.A., MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., U.S. BANK N.A.,
US BANK AS TRUSTEE FOR CREDIT SUISSE FIRST BOSTON,
ARMT 2005-5, U.S. BANK, US BANK AS TRUSTEE FOR
ADJUSTABLE RATE MORTGAGE, ARMT 2005-5,
ADJUSTABLE RATE MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2005-5,

Defendants-Appellees.

---

Appeal from the United States Bankruptcy Court for the Northern District of Illinois
Case No. 14-Ap-00121
The Honorable Jack B. Schmetterer

---

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES

---

Jeffrey D. Pilgrim
John C. Crees
PILGRIM CHRISTAKIS LLP
321 North Clark Street, 26th Floor
Chicago, Illinois 60654
(312) 939-6580 (Phone)
(312) 939-0983 (Fax)
Attorneys for Defendants-Appellees

## CORPORATE DISCLOSURE STATEMENT

Defendant Wells Fargo Bank, N.A., d/b/a America's Servicing Company, ("Wells Fargo"), by counsel, states in support of its corporate disclosure statement pursuant to Federal Rule of Bankr. Procedure 8012 and notification of affiliates pursuant to Local Rule 3.2 as follows:

1.     Wells Fargo is wholly owned subsidiary of Wells Fargo & Company, a Delaware corporation publicly traded on NASDAQ under the symbol WFC.

2.     Publicly-held corporation parents, subsidiaries, or affiliates of Wells Fargo that own more than 5% of its stock are: Wells Fargo & Company, WFC Holdings Corporation, and Charter Holdings, Inc.

Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS"), by its counsel, states in support of its corporate disclosure statement pursuant to Federal Rule of Bankr. Procedure 8012 and notification of affiliates pursuant to Local Rule 3.2, as follows:

1.     MERS is a wholly-owned subsidiary of MERSCORP Holdings, Inc. MERSCORP Holdings, Inc. is a privately held corporation.

2.     Any publicly held corporation owning more than 5% of MERS: Federal National Mortgage Association (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac) each own more than 10% of MERSCORP Holdings, Inc.

Defendant U.S. Bank, N.A. ("U.S. Bank") by its undersigned counsel, states pursuant to Federal Rule of Bankr. Procedure 8012 and Local Rule 3.2 as follows:

1.     U.S. Bank is a wholly owned subsidiary of U.S. Bancorp, which is a publicly held corporation.

i

## TABLE OF CONTENTS

BANKRUPTY RULE 8012 DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iv

STATEMENT ON ORAL ARGUMENT .................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................................................ 1

ISSUES PRESENTED FOR REVIEW ....................................................................................... 2

STATEMENT OF THE CASE ..................................................................................................... 3

SUMMARY OF ARGUMENT .................................................................................................... 7

ARGUMENT ................................................................................................................................. 8

    I.     THE FINDINGS MADE BY THE BANKRUPTCY COURT ARE
           WITHIN THE SCOPE OF THE ISSUES PRESENTED IN THE
           CASE. ......................................................................................................................... 8

          A.    The JOP Opinion is not a Rule 16 Pretrial Order, and the
                actual Final Pretrial Order does not limit the issues as
                Schmeglar contends. ................................................................................. 9

          B.    The challenged findings are within the scope of the issues
                presented in the case and at trial. .............................................................. 9

                1.    The bankruptcy court's finding that Wells Fargo is
                        the servicer of the Loan and entitled to collect
                        payments from Schmeglar is within the scope of the
                        case. ........................................................................................... 10

                2.    The bankruptcy court's finding that the Trust is
                        known by other names is within the scope of the
                        case. ........................................................................................... 10

                3.    The bankruptcy court's finding that Wells Fargo
                        advanced Mortgage payments because Schmeglar
                        defaulted is within the scope of the case. ..................................... 12

4.     The bankruptcy court's "finding" that Schmeglar had the opportunity to testify at trial but did not do so is not a factual finding and not beyond the scope of the case. ............................................................................ 15

II.     THE FINDINGS MADE BY THE BANKRUPTCY COURT ARE SUPPORTED BY SUFFICIENT EVIDENCE AND NOT CLEARLY ERRONEOUS. ......................................................... 16

A.     The evidence establishes that Wells Fargo is the servicer of the Loan. ............................................................................ 17

B.     The evidence establishes that the Trust is known by different names .......................................................................... 18

C.     The evidence establishes that Wells Fargo advanced Loan payments to the Trust because Schmeglar defaulted on the Loan. ............................................................................ 19

D.     The bankruptcy court's "finding" that Schmeglar had the opportunity to testify at trial but did not do so is not a factual finding requiring an evidentiary basis, and the record shows that he did have that opportunity. ....................................... 22

CONCLUSION ................................................................................................................ 23

CERTIFICATE OF COMPLIANCE ................................................................................ 24

CERTIFICATE OF SERVICE ........................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*In re 2715 N. Milwaukee LLC*,
422 B.R. 675 ................................................................................................ 1

*Carnes Co. v. Stone Creek Mech., Inc.*,
412 F.3d 845 (7th Cir. 2005). ....................................................................... 16

*Gorlikowski v. Tolbert*,
52 F.3d 1439 (7th Cir. 1995) ......................................................................... 8

*In re Jepson*,
2014 WL 1884719, at *1 (N.D. Ill. May 9, 2014). .......................................... 4

*In re Maurice*,
21 F.3d 767 (7th Cir. 1994) ...................................................................... 15, 22

*In re Midway Airlines, Inc.*,
383 F.3d 663 (7th Cir. 2004). ...................................................................... 16

*Rajamin v. Deutsche Bank National Trust Co.*,
757 F.3d 79 (2d Cir. 2014)............................................................................ 4

*S.E.C. v. Van Waeyenberghe*,
284 F.3d 812 (7th Cir. 2002) ......................................................................... 1

*Stelpflug v. Federal Land Bank of St. Paul*,
790 F.2d 47 (7th Cir. 1986) .......................................................................... 1

## <u>Rules</u>

Fed. R. Civ. P. 16 ....................................................................................... 6, 8-9

Fed. R. Civ. Pro. 52(a)(6) ............................................................................. 16

Fed. R. Bankr. P. 7016.................................................................................. 6, 8

Fed. R. Bankr. P. 7052.................................................................................. 16

Fed. R. Bankr. P. 8002(a)(1)......................................................................... 1

## STATEMENT ON ORAL ARGUMENT

Defendants-Appellees respectfully submit that this appeal may be determined on the record before the Court and that oral argument is unnecessary.

## JURISDICTIONAL STATEMENT

Defendants-Appellees do not dispute the Court's jurisdiction to hear this appeal. Plaintiff-Appellant LeMire Schmeglar ("Schmeglar") states in his Brief that the bankruptcy court "entered" the Final Judgment ("Judgment") and Findings of Fact and Conclusion of Law ("FFCL") on May 22, 2015, which is really the date the bankruptcy judge signed the Judgment and FFCL. (Schmeglar Br. at 4.) Under Schmeglar's stated version of events, his appeal would be untimely. *See* Fed. R Bankr. P. 8002(a)(1). In reality, however, entry of the Judgment and FFCL was delayed until the Clerk of the Court made a notation and actually entered them on the docket on May 26, 2015. (Dkt. # 187, 189.) "Usually an order is signed on one day and entered on the docket that same day, or shortly afterward. If the two dates differ, it is the date of docketing that starts the time for purposes of motions practice and appeals." *S.E.C. v. Van Waeyenberghe*, 284 F.3d 812, 815 (7th Cir. 2002); *In re 2715 N. Milwaukee LLC*, 422 B.R. 675, 681 (Bankr. N.D. Ill. 2010) ("'Entry' . . . occurs only when the essentials of a judgment or order are set forth in a written document separate from the court's opinion or memorandum *and* when the substance of this separate document is reflected in an appropriate notation on the docket sheet assigned to the action."). Therefore, the bankruptcy court entered Judgment on May 26, 2015, and Schmeglar filed a timely notice of appeal on June 9, 2015. *See* Fed. R. Bankr. P. 8002(a)(1).

1

## ISSUES PRESENTED FOR REVIEW

1.      Were the bankruptcy court's findings within the scope of the issues presented in the case? This issue is reviewed on appeal to determine whether the bankruptcy court abused its discretion.

2.      Were the bankruptcy court's findings supported by sufficient evidence? This issue is reviewed on appeal to determine whether the bankruptcy court committed clear error.

## STATEMENT OF THE CASE

This appeal arises out of a bankruptcy adversary proceeding ("Adversary Proceeding") initiated by Plaintiff-Appellant LeMire Schmeglar ("Schmeglar") by his filing of a one-count interpleader amended complaint ("Complaint"), adjudicated by the bankruptcy court through its entry of its Findings of Fact and Conclusions of Law ("FFCL") and Final Judgment ("Judgment"). The Complaint involves a mortgage loan ("Loan") that Schmeglar obtained on March 22, 2005, for $875,000 from PHM Financial Inc. ("PHM") for the purchase of his home located at 2715 North Paulina Street in Chicago, Illinois ("Property"). (Compl. Ex. A (Dkt. # 5); FFCL ¶ 1 (Dkt. # 187).)[1] The Loan is evidenced by a note ("Note") which is secured by the mortgage ("Mortgage") on the Property.[2] (*Id.*) Mortgage Electronic Registration Systems, Inc. ("MERS") was the named mortgagee, solely as nominee for PHM, and PHM later indorsed the Note "in blank" by executing an allonge which is affixed to the Note. (Compl. Ex. A.)

Thereafter, Schmeglar's Note was sold and transferred to a mortgage-backed securities ("MBS") trust known as the Adjustable Rate Mortgage Trust 2005-5 ("Trust").[3] In this regard, and as courts have explained:

> Residential mortgage loans, rather than being retained by the
> original mortgagee, may be pooled and sold "into trusts created to
> receive the stream of interest and principal payments from the
> mortgage borrowers. The right to receive trust income is parceled

---

[1] Because most of the page numbers for the Record on Appeal are illegible, references to the documents contained in the Record are made to the docket in the Adversary Proceeding and cited as "Dkt. # __."

[2] The original Note and Mortgage were produced in the proceeding below and at trial, and Schmeglar testified that they each contain his original signature. (2/19/15 Hearing Tr. 11:15-12:21.)

[3] The Trust is known by different names, including "Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5," "CSFB Adjustable Rate Mortgage Trust 2005-5," "Credit Suisse First Boston ARMT 2005-5," "Wells Fargo Bank, N.A., as Servicer for Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5," and "Credit Suisse First Boston Mortgage Securities Corp., Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-5." (FFCL ¶ 8.)

> into certificates and sold to investors, called certificateholders. The
> trustee hires a mortgage servicer to administer the mortgages by
> enforcing the mortgage terms and administering the payments. The
> terms of the securitization trusts as well as the rights, duties, and
> obligations of the trustee, seller, and servicer are set forth in a
> Pooling and Servicing Agreement . . . ."

*Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 81-82 (2d Cir. 2014) (quoting *BlackRock*

*Fin. Management Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 173 (2d

Cir. 2012); *see also In re Jepson*, No. 14 C 423, 2014 WL 1884719, at *2 (N.D. Ill. May 9,

2014).

Here, under the Pooling and Servicing Agreement (dated as of May 1, 2005) ("PSA") that

created the Trust, the "depositor"—i.e., the entity that purchased loans from the "seller" and

transferred them to the Trust in exchange for certificates issued by the Trust—is Credit Suisse

First Boston Mortgage Securities Corp. ("CSFB"); the "trustee" is U.S. Bank, N.A. ("U.S.

Bank"); and Wells Fargo Bank, N.A. ("Wells Fargo") acts as both the "master servicer" and also

the "servicer" of Schmeglar's Loan. (Compl. Ex. E; FFCL ¶¶ 5-7.) Pursuant to the PSA,

Schmeglar's Note, indorsed in blank, was transferred to the Trust. (3/23/15 Hearing Tr. 56:10-

56:12; FFCL ¶¶ 4-5.)

After Schmeglar defaulted on the Loan, a foreclosure case was initiated on October 5,

2011, in the Circuit Court of Cook County ("Foreclosure Case") (Case No. 11-ch-34711); and

ultimately, on September 26, 2012, a judgment of foreclosure ("Foreclosure Judgment") was

entered against Schmeglar. (Compl. Ex. F-G; FFCL 1.)

Shortly thereafter, on October 24, 2012, Schmeglar filed an individual Chapter 11

Bankruptcy Case ("Chapter 11 Case") (Case No. 12-bk-42283). (FFCL at 1.) Schmeglar has

disputed that *any* party who has been named or participated in any way in the Chapter 11 Case or

Foreclosure Case has an enforceable lien on the Property or the right to collect mortgage

4

payments associated with the Loan. And it was that contention that formed the basis of Schmeglar's first adversary proceeding, in which he sought to declare the Mortgage on the Property "invalid." *See Schmeglar v. DLJ Mortgage Capital, Inc., et al.*, Case No. 13-ap-554 (Bankr. N.D. Ill.). Schmeglar's contention was soundly rejected by the bankruptcy court and his first adversary case was dismissed. (2/25/14 Hearing Tr. 6:10-6:20.)

Schmeglar then filed the Adversary Proceeding (Case No. 14-ap-121) that is the subject of this appeal, this time contending that he "was unable to determine which party is the owner of the Mortgage and Note due to conflicting representations by" the named defendants.[4] (Compl. ¶ 55.) Therefore, by his Complaint, he asked the bankruptcy court to "determine and enter an order setting forth the proper recipients of the mortgage payments." (*Id*. ¶ 57.) Wells Fargo, MERS, U.S. Bank, and the Trust (named in different ways and sometimes with reference to the trustee U.S. Bank) were named as defendants (collectively referred to herein as "Defendants").[5] In his Complaint, Schmeglar raised a number of issues that were germane to his request for a judicial declaration concerning the owner of his Mortgage and proper recipients of his payments, including Schmeglar's assertion that:

- the Note was actually not endorsed in blank;

- Defendants were not the proper holder of the Note;

- some Defendants were not legal entities capable of owning a note and mortgage;

- the chain of title of the Note and Mortgage was deficient;

---

[4] Schmeglar's suggestion in his Brief that he filed this case at "the urging of the Court," (Schmeglar Br. 6), is misleading—unless, of course, Schmeglar views the Court's "urging" as its dismissal of his first action and its rejection of his effort to avoid his mortgage obligations entirely.

[5] PHM and DLJ Mortgage Capital, Inc. were also named as defendants in the Adversary Proceeding, were never properly served, did not appear, and were eventually dismissed. (Order Dismissing Certain Parties (Dkt. # 183).) The names of these parties appear in the caption of Schmeglar's Appellate Brief, but they are not parties to this appeal.

- Schmeglar has standing to assert claims under the terms of the PSA; and

- Schmeglar had standing to assert claims under the terms of MERS's internal procedures manual.

(Compl. *generally*.)

Defendants filed a motion for judgment on the pleadings, which the bankruptcy court denied in a memorandum opinion dated November 18, 2014 ("JOP Opinion"). (Dkt. # 80.) In doing so, the court found that there were factual issues that could not be disposed of on the pleadings, and thus stated that "[t]he proceeding will be set for trial at which the primary (and perhaps sole) issue will be to establish and identify the party that presently holds physical possession of the original and authentic mortgage note and ascertain whether or not it is indorsed in blank." (*Id.* 6.) After the bankruptcy court entered the JOP Opinion, Schmeglar took written discovery and two depositions of Wells Fargo employees aimed at obtaining information related to the claims and allegations in his Complaint. (Slack Dep., Feb. 18, 2015 (Defs. Trial Ex. 8); Goaley-Pluggenkuhle Dep., March 11, 2015 (Defs. Trial Ex. 12).)

On January 13, 2015, the bankruptcy court entered a Final Pretrial Order ("Final Pretrial Order") pursuant to Federal Rule of Bankruptcy Procedure 7016 and Federal Rule of Civil Procedure 16. (Dkt. # 111.) Prior to trial, the parties—including Schmeglar—filed their respective proposed findings of fact and conclusions of law covering the issues presented in the case. (Schmeglar's Proposed Findings of Fact and Conclusions of Law is referred to and cited herein as "Schmeglar Proposed FFCL" (Dkt. # 151).)

At trial, the bankruptcy court admitted, with certain exceptions, the parties' proffered exhibits into evidence. (3/23/15 Hearing Tr. 22:2-34:24; Order Excluding Plaintiff's Exhibits (Dkt. # 160).) Schmeglar then rested his case without providing any testimony (even though the bankruptcy court expressly allowed him to testify). (3/23/15 Hearing Tr. 27:8-28:10, 29:15-

29:23.) Defendants presented a witness from the servicer Wells Fargo, who was also cross-examined. Based on the exhibits and testimony introduced at trial, and after a number of hearings concerning that evidence, the bankruptcy court entered its Judgment and Findings of Fact and Conclusions of Law on May 26, 2015. This appeal followed.

## SUMMARY OF ARGUMENT

By his appeal, Schmeglar challenges the following four factual findings of the bankruptcy court: (1) that Wells Fargo is the servicer of the Loan and entitled to collect payments from Schmeglar; (2) that the Trust is known by different names, "such as 'Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5,' 'CSFB Adjustable Rate Mortgage Trust 2005-5,' and 'Credit Suisse First Boston ARMT 2005-5,' and those names all refer to the same Trust"; (3) "that Wells Fargo's advances [to the Trust] do not excuse Schmeglar from making any of his mortgage payments during the period of those advances or otherwise, and that Schmeglar is in default under the terms of the Note and Mortgage by his admitted failure to make timely mortgage payments"; and (4) that "[e]ven though Schmeglar had the opportunity to testify and offer evidence that he had received conflicting demands for payment, he did not take the stand, and offered no evidence of his supposed confusion as to whom he should pay, or evidence of conflicting demands upon him for payment." (FFCL ¶¶ 4-8, 10; Judgment ¶¶ 1-2, 4.) Specifically, he challenges those four factual findings, claiming—first—that they are "beyond the scope" of the issues presented in the case, and—second—that they are "not supported by any testimony or evidence." (Schmeglar's Br. at 5.)

As explained below, however, each of the challenged findings is squarely within the issues presented—issues Schmeglar expressly asked the court to decide—and clearly supported by the evidence. Accordingly, the bankruptcy court's FFCL and Judgment should be affirmed.

## ARGUMENT

## I. THE FINDINGS MADE BY THE BANKRUPTCY COURT ARE WITHIN THE SCOPE OF THE ISSUES PRESENTED IN THE CASE.

As his first argument on appeal, Schmeglar claims that the four challenged findings are "beyond the scope" of the issues presented in the case and at trial. (Schmeglar's Br. at 4-5, 8-12.) Schmeglar's argument rests entirely on his contention that the bankruptcy court's JOP Opinion constitutes a Rule 16 "final pretrial order"; and that as an (alleged) final pretrial order, it limited the scope of the issues such that the challenged findings are beyond that scope. (*Id.* at 8-10.) Because Schmeglar is challenging the bankruptcy court's decision concerning the entry and application of a pretrial order, this Court reviews that decision for an abuse of discretion. *See Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir. 1995). Thus, the FFCL and Judgment can be reversed only if the Court determines that "no reasonable person could take the view adopted by the trial court." *Id.* ("Generally, an abuse of discretion occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found.").

As explained below, Schmeglar's argument fails—and the bankruptcy court clearly did not abuse its discretion—because (1) the JOP Opinion is not a final pretrial order or *the* Final Pretrial Order entered in this case, and the actual Final Pretrial Order does not limit the issues as Schmeglar suggests, and (2) the findings made by the bankruptcy court are clearly within the scope of the issues presented in this case. Thus, the Judgment should be affirmed.

**A.      The JOP Opinion is not a Rule 16 Pretrial Order, and the actual Final Pretrial Order does not limit the issues as Schmeglar contends.**

While Schmeglar correctly notes that Fed. R. Civ. P. 16 (applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7016) gives a court discretion to enter a final pretrial order that, among other things, simplifies issues in advance of a trial, *see* Fed. R. Civ. P. 16, the bankruptcy court's opinion denying Defendants' Motion for Judgment on the Pleadings is plainly *not* a Rule 16 final pretrial order. It was not entered pursuant to Rule 16; it does not contain any "trial plan" referenced in Rule 16; and it was not entered after any pretrial or status conference concerning the trial. *See* Fed. R. Civ. P. 16. The JOP Opinion merely contains the bankruptcy court's decision on Defendant's Motion for Judgment on the Pleadings, and there is nothing in it indicating that it is a final pretrial order.

Perhaps most importantly, however, Schmeglar's contention that the JOP Opinion is a "final pretrial order"—the contention upon which his *entire* challenge to the "scope" of the court's findings rests—conveniently ignores the fact that the bankruptcy court entered an *actual* Final Pretrial Order on January 13, 2015. (Final Pretrial Order (Dkt # 111.) And, significantly, the *actual* Final Pretrial Order does not limit the issues as Schmeglar claims. (*Id.*) In fact, Schmeglar cannot point to anything even suggesting that any of the challenged findings are beyond the scope of that Order. Thus, because the JOP Opinion is clearly not a final pretrial order and certainly not *the* Final Pretrial Order entered in this case, Schmeglar's argument that the challenged findings are beyond the scope of the JOP Opinion necessarily fails.

**B.      The challenged findings are within the scope of the issues presented in the case and at trial.**

Moreover, even considering the JOP Opinion along with the other pretrial rulings and claims asserted in this case, it is clear that each of the four factual findings fall squarely within

9

the issues presented in the case. And because the bankruptcy court certainly did not abuse its discretion by reaching those findings, Schmeglar's argument should be rejected.

      **1.**    **The bankruptcy court's finding that Wells Fargo is the servicer of the Loan and entitled to collect payments from Schmeglar is within the scope of the case.**

First, Schmeglar challenges the bankruptcy court's finding that "Wells Fargo Bank, N.A. is the servicer and is entitled to collect the Plaintiff's mortgage payments," claiming that that finding is beyond the scope of the issues presented in the case. (Schmeglar's Br. at 4-5, 10-12.) This interpleader action, however, is based entirely on Schmeglar's claim that multiple parties (including Wells Fargo) were supposedly demanding his mortgage payments, and therefore he needed the court to step in to determine who owns the Loan and who he should be paying. Discovery was taken and evidence was provided as to the relationship of each defendant to Schmeglar's Loan. And in the end, the bankruptcy court correctly found that "Wells Fargo Bank, N.A. ('Wells Fargo') is the servicer for U.S. Bank and is entitled to receive payments and collect the mortgage debt from [Schmeglar] under the terms of the Note and Mortgage for and on behalf of U.S. Bank." (Judgment ¶ 2.)

Thus, not surprisingly, in his Proposed FFCL submitted to the court in advance of trial, Schmeglar *himself* proposed the finding that Wells Fargo is the servicer of the Loan and expressly asked the court to make that finding. (Schmeglar Proposed FFCL ¶¶ 21-22.) But, incredibly, after the court made the finding he requested, Schmeglar now argues that the court erred by doing so. Because the court's finding that Wells Fargo is the servicer of the Loan and entitled to receive payments is clearly within the scope of the issues presented, Schmeglar's argument should be rejected.

### 2. The bankruptcy court's finding that the Trust is known by other names is within the scope of the case.

Second, Schmeglar claims that the bankruptcy court's finding that "the Trust that owned the mortgage and note has multiple names" is also beyond the scope of the issues presented in the case. (Schmeglar's Br. at 4-5, 10-11.) But, again, Schmeglar initiated the case supposedly because he believed multiple parties were claiming to own his Loan, and he needed the court to clear everything up. Indeed, in his Complaint, Schmeglar alleges that although the PSA names the Trust as "Adjustable Rate Mortgage Trust 2005-5": (1) MERS's records show that the Loan was transferred to "ARMT 2005-5, Adjustable Rate Mortgage Back Pass Through Certificates Series 2005-5"; (2) he allegedly received separate correspondence stating that the owner is "ARMT 2005-5/PMSR" and "U.S. Bank, N.A. ARMT 2005-5"; (3) the action to foreclose the Mortgage and resulting Foreclosure Judgment are in the name of "US Bank National Association, as Trustee for Credit Suisse First Boston ARMT 2005-5"; and (4) a proof of claim was filed in his Chapter 11 Case in the name of "US Bank National Association as Trustee for Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage Backed Pass Through Certificates, Series 2005-5." (Compl. ¶¶ 11, 44, 46-47, 50.)

Discovery was taken on these issues, including Schmeglar's deposition of Wells Fargo representative James Slack, in which Schmeglar examined the representative as to the name or various names of the Trust. (Slack Dep. 9:3-10:14, 26:1-26:20.) At trial, Schmeglar examined a different Wells Fargo representative on this issue as well, asking: "Is the trust known by different names"; "[H]ow many legal names does that trust have"; and "How would a consumer know that all of these different names are the same Trust." (3/23/15 Hearing Tr. 75:22-80:3.) And, critically, before trial and as part of his own Proposed FFCL, Schmeglar *himself* proposed that the court decide the question of whether the Trust has more than one name, specifically

requesting that the court find that "ARMT 2005-5 is the legal *and only name of the trust*." (Schmeglar Proposed FFCL ¶ 17 (*emphasis added*).) However, after the court decided that question and reached a different conclusion than Schmeglar proposed, Schmeglar claims that the question was beyond of the scope of the issues presented. But because the court's finding that the Trust is known by different names is clearly within the scope of the issues presented—and an issue that Schmeglar expressly asked to be decided—Schmeglar's argument should be rejected.

### 3. The bankruptcy court's finding that Wells Fargo advanced Mortgage payments because Schmeglar defaulted is within the scope of the case.

Third, Schmeglar claims that the bankruptcy court made a finding that is beyond the scope of the issues presented when it concluded "that Wells Fargo's advances [to the Trust] do not excuse Schmeglar from making any of his mortgage payments during the period of those advances or otherwise, and that Schmeglar is in default under the terms of the Note and Mortgage by his admitted failure to make timely mortgage payments." (Schmeglar's Br. at 4-5, 10-11.) Here again, however, Schmeglar raised and expressly asked the court to decide that issue as part of his lawsuit.

Indeed, as part of his Proposed FFCL, Schmeglar asked the court to find that "[t]he servicer has paid the master servicer all interest payments due and owing on the Note and Mortgage since January of 2009," and that "[t]he servicer has paid all taxes and insurance payments since January 2009." (Schmeglar Proposed FFCL ¶¶ 23-25.) Then, at trial, Schmeglar argued that those advances excused him from making his payments, and that because the Trust had received all of the payments through Wells Fargo's advances, he was not in default. In particular, at trial, Schmeglar argued as follows:

MR. OHLMAN: Your Honor, that's -- here's the problem with this: Through testimony we've heard that the Trust has been paid all monies during the course of this proceeding.

12

THE COURT: No, some monies were advanced by Wells Fargo. It was a strange thing we learned. Wells Fargo, the servicer, is advancing some sort of monies into the account and will adjust that later between it and the Trust, but that doesn't mean you're excused from making those payments.

MR. OHLMAN: Your Honor, the only testimony states that they will be paid back upon foreclosure.

THE COURT: Well, that's their problem.

MR. OHLMAN: Right, but now we have -- here's the problem, Your Honor: We have a – we have a mortgage and a note that the lender who the owner of the mortgage and note does not know is in -- that does not know has any payments due and owing, they have been paid all payments --

                              *       *       *
THE COURT: Well, you're saying that there's a defense based on that?

MR. OHLMAN: There is.

                              *       *       *
THE COURT: Okay. Let's start with your basic premise, if I understand it. You think the evidence showed that Wells Fargo was advancing the interest payments on the note that your client signed.

MR. OHLMAN: Correct.

THE COURT: And, therefore, your client doesn't have any obligation to do so?

MR. OHLMAN: Does not have an obligation to pay Wells Fargo.

                              *       *       *
MR. OHLMAN: Your Honor, the mortgage, there is no -- there has never been a late payment to the owner --

THE COURT: Counsel, your client has not made those payments; someone advanced them, is that your point?

MR. OHLMAN: Well, that is correct, yes.

THE COURT: So you feel that you're excused from making the payments by reason of the advance by Wells Fargo?

       MR. OHLMAN: We do not believe that we need to be making payments to Wells Fargo.

(4/2/15 Hearing Tr. 12:15-16:10.)[6]

Of course, Schmeglar's requested findings and arguments at trial were preceded by discovery he took—and insisted on taking—directed precisely at the advances Wells Fargo made, the reasons they were made, and their effect, if any, on Schmeglar's obligations under the Loan. (FFCL at 5 ("In pursuing discovery, Schmeglar found out that Wells Fargo had advanced payments to US Bank in the amount of his mortgage payment.").) In fact, at Schmeglar's request, the bankruptcy court ordered Defendants "to produce to [Schmeglar] a complete pay history since 2009, of any and all payments or advances made by Wells Fargo (or one of its subsidiaries) to any entity that claims or has claimed an interest in the mortgage and note (including any and all tax payments) as is required by the Pooling and Servicing Agreement …." (1/22/15 Order (Dkt. # 125).) After those documents were produced, Schmeglar then obtained a court order requiring Wells Fargo to produce a witness to explain that pay history, including the advances Wells Fargo made to the Trust after Schmeglar defaulted on the Loan in January 2011. (2/20/15 Order (Dkt. # 138).) As a result, the parties traveled to Des Moines, Iowa, again, so that Schmeglar could depose another Wells Fargo representative. And in response to Schmeglar's questioning, the Wells Fargo representative explained, *inter alia*, that pursuant to the terms of the PSA, Wells Fargo advanced to the Trust the monthly payments Schmeglar had failed to pay

---

[6] After Schmeglar raised and argued this issue, the bankruptcy court requested proposed findings of facts and conclusions of law, with cited authority, to address and decide it. Schmeglar asked for, and was granted, the opportunity to file a response and objections to the proposed FFCL, (*id.* 23-24); but when he received the proposed FFCL, which demonstrated that courts have unanimously rejected Schmeglar's claim that advances made by a servicer somehow satisfy a borrower's payment obligation, (Dkt. # 169, 173 (citing cases)), Schmeglar did not challenge the proposed factual findings and legal conclusions—and he certainly did not argue that they were beyond the scope of the issues the court was to decide.

since at least January 2011, despite his obligation to do so under the Loan. (Goaley-Pleggenkuhle Dep. 25:3-26:2, 45:4-45:21, 94:10-95:9, 109:3-110:7.)

Thus, contrary to Schmeglar's argument that the bankruptcy court's ruling concerning the effect of Wells Fargo's advances and Schmeglar's related default was somehow beyond the scope of the issues presented in the case, Schmeglar clearly raised those issues and expressly asked the court to decide them. Thus, it was proper (and nowhere near an abuse of discretion) for the court to do so.

### 4. The bankruptcy court's "finding" that Schmeglar had the opportunity to testify at trial but did not do so is not a factual finding and not beyond the scope of the case.

Lastly, Schmeglar argues that the bankruptcy court made a "finding" that is beyond the scope of the issues presented when it noted that "[e]ven though Schmeglar had the opportunity to testify and offer evidence that he had received conflicting demands for payment, he did not take the stand, and offered no evidence of his supposed confusion as to whom he should pay, or evidence of conflicting demands upon him for payment." (Schmeglar Br. at 4-5, 10-11.) But this challenged "finding" is not a finding of fact at all; instead, at most, Schmeglar seems to be making a (mistaken) post hoc challenge to the result of an evidentiary ruling concerning his testimony at trial. As such, by failing to raise this objection at trial, Schmeglar waived the issue on appeal. *See Matter of Maurice*, 21 F.3d 767, 771 (7th Cir. 1994) ("Raising the issue after the judge has conducted the hearing and received all of the evidence is too late; failing to timely object to the alleged error waives any right to later appeal the issue.").

Regardless, Schmeglar's suggestion that he was barred from testifying is belied by the record. In fact, during the preliminary conference before the trial began, Schmeglar's counsel stated that he was not calling Schmeglar to testify and, after the trial exhibits were admitted,

rested his case. (3/23/15 Hearing Tr. 29:14-29:23.) After Schmeglar's counsel stated that he would not be calling Schmeglar to testify, the bankruptcy court initially granted Defendants' pending motion to bar Schmeglar's testimony, but then retreated and made it clear that it was "not going to exclude his testimony." (*Id.* 28:10) Specifically, the court explained on the record that:

> I think a lot of [Schmeglar's] testimony relates to a theory that his counsel has, which I don't think is good law, as you argued in your motion. So I'm not going to exclude his testimony. He brought this case. He may have some things on his chest he wants to tell me. I'm not sure I'm going to prevent him from doing that. I hope it's fairly relevant, but I can't tell right now that he has nothing to say.

(*Id.* 28:12-28:16) The court made it clear that "[t]here may be other testimony, including rebuttal testimony, which might come about … we're not intending to bar your client from participating in the case." (*Id.* 27:8-27:12.) Thus, Schmeglar's challenge to the court's "finding" concerning his ability to testify at trial is misplaced, waived on appeal, and ultimately belied by the record below.

Thus, for all of these reasons, the four challenged findings are not beyond the scope of the issues presented in this case, and the bankruptcy court certainly did not abuse its discretion in deciding those issues.

## II. THE FINDINGS MADE BY THE BANKRUPTCY COURT ARE SUPPORTED BY SUFFICIENT EVIDENCE AND NOT CLEARLY ERRONEOUS.

As his only other argument on appeal, Schmeglar claims that the four challenged findings are "not supported by any testimony or evidence." (Schmeglar Br. at 5, 12-18.) Because Schmeglar is challenging the bankruptcy court's factual findings, this Court reviews those findings for clear error. *See* Fed. R. Bankr. P. 7052; Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses'

16

credibility."); *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004). Thus, the challenged findings may be reversed "only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 847 (7th Cir. 2005).

As explained below, Schmeglar's argument fails because each one of the findings is supported by sufficient and often cumulative evidence, and notably there is no evidence at all suggesting a different result. Indeed, even Schmeglar does not argue that any of the challenged findings are factually wrong. Thus, the FFCL and Judgment should be affirmed.

### A. The evidence establishes that Wells Fargo is the servicer of the Loan.

First, all of the evidence offered by both Schmeglar and Defendants clearly establishes that Wells Fargo is the servicer of the Loan and entitled to collect payments from Schmeglar. For example, the three witnesses whose testimony was admitted at trial each testified that Wells Fargo is the servicer and entitled to collect payments. (3/23/15 Hearing Tr. 52:6-52:9, 55:10-55:19; Slack Dep. 7:17-7:19; Goaley-Pleggenkuhle Dep. 42:16-42:17.) The PSA establishes that Wells Fargo is the servicer and master servicer of the Trust and entitled to receive Schmeglar's Loan payments. (FFCL ¶¶ 5-6; Compl. Ex. E § 3.01.) Correspondence from U.S. Bank as trustee for the Trust, which Schmeglar introduced at trial, states that Wells Fargo is the servicer. (Schmeglar Trial Ex. F; Compl. Ex. J ("You must work with Wells Fargo, as the servicer of your loan, to have your issues addressed.").) And in the various loss mitigation applications Schmeglar submitted, he states that Wells Fargo is the servicer of his Loan. (Defs.' Trial Ex. 9 at 2-3.)

Even Schmeglar asked the bankruptcy court to make the finding that Wells Fargo is the servicer of the Loan, thus acknowledging that that is the case and that the finding is adequately

supported. (Schmeglar Proposed FFCL ¶¶ 21-22.) And because the court's finding that Wells Fargo is the servicer of the Loan and entitled to receive payments is clearly supported by the evidence—in fact, there is absolutely no evidence to the contrary—Schmeglar's argument should be rejected.

**B.      The evidence establishes that the Trust is known by different names.**

Second, contrary to Schmeglar's contention, the evidence presented at trial clearly demonstrates that the Trust is known by names other than the "Adjustable Rate Mortgage Trust 2005-5." At the same time, there is no evidence at all that the Trust is referred to by only one name, or that the other names for the Trust identified in the bankruptcy court's FFCL are referring to something else. Because Schmeglar does not and cannot identify any clear error, the Judgment should be affirmed.

For example, Mr. Bateman testified that: (1) in his experience with all of the other PSAs he has worked with, trusts are typically referred to by different names; (2) in addition to "Adjustable Rate Mortgage Trust 2005-5," the Trust is also known by other names, such as (a) "CSFB Adjustable Rate Mortgage Trust 2005-5," (b) "Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5," and (c) "Credit Suisse First Boston ARMT 2005-5," and that they all refer to the very same Trust; and (3) "CSFB" simply refers to Credit Suisse First Boston, which is the Depositor under the PSA, and "Adjustable Rate Mortgage Trust" is frequently abbreviated as "ARMT." The only other witnesses similarly testified that the Trust is known by different names. (Slack Dep. 31, 33-34; Goaley-Pleggenkuhle Dep. 107:18.)

In addition, other evidence introduced at trial—and also available publicly[7]—shows that the U.S. Securities and Exchange Commission (SEC) refers to the Trust as "CSFB Adjustable Rate Mortgage Trust 2005-5." (Defs' Trial Ex. 7.) The Assignment of Mortgage refers to the Trust as "Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5." (Defs' Trial Ex. 3.) And the PSA itself refers to the Trust in a variety of ways. *Compare* Compl. Ex. E (PSA) § 2.01 ("the Adjustable Rate Mortgage Trust 2005-5" (the 'Trust')") *with* PSA Ex. T ("Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-5 (the 'Trust')"), § 3.06 ("Wells Fargo Bank, N.A., as Servicer for *Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5*," emphasis added), Ex. R ("in relation to the Credit Suisse First Boston Mortgage Securities Corp., Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-5").

Thus, as the bankruptcy court correctly found, "[p]ersons and entities also refer to the Trust by other names, such as the 'Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass Through Certificates, Series 2005-5,' 'CSFB Adjustable Rate Mortgage Trust 2005-5,' and 'Credit Suisse First Boston ARMT 2005-5,' and those names all refer to the same Trust." (FFCL ¶ 8.) And there is no evidence suggesting otherwise.

## C. The evidence establishes that Wells Fargo advanced Loan payments to the Trust because Schmeglar defaulted on the Loan.

As explained above, Schmeglar, as part of his lawsuit, argued that Wells Fargo's advances to the Trust for Schmeglar's missed Loan payments excuse him from making those payments; and that because the Trust had received all of the payments through Wells Fargo's

---

[7] *See* http://www.sec.gov/cgi-bin/browse-edgar?CIK=0001328710&action=getcompany.

advances, he was not in default. (Compl. Ex. E § V; Schmeglar FFCL ¶¶ 23-25; 4/2/15 Hearing Tr. 15:23-16:5.) The bankruptcy court properly rejected that argument. (FFCL at 5-7.) Now, in addition to arguing that the court's rejection of the argument is somehow beyond the scope of the issues presented, Schmeglar also contends that the court's finding was "not supported by any testimony or evidence." (Schmeglar Br. at 5, 12-15, 18.) This contention also fails.

As a threshold matter, contrary to the position he now takes, Schmeglar *himself* asked the bankruptcy court to find that Wells Fargo made the advances for his missed Loan payments, and then later admitted on the record that he never made the payments that ended up being advanced:

> MR. OHLMAN:  Your Honor, the mortgage, there is no -- there has never been a late payment to the owner --
>
> THE COURT:  Counsel, your client has not made those payments; someone advanced them, is that your point?
>
> MR. OHLMAN:  Well, that is correct, yes.

(4/2/15 Hearing Tr. 15:23-16:5.)[8]

Moreover, the evidence admitted at trial clearly supports the factual finding that Wells Fargo, as servicer, advanced monthly mortgage payments to the Trust because Schmeglar defaulted on the Loan. In this regard, Mr. Bateman testified that pursuant to the PSA, Wells Fargo, as servicer and master servicer, is obligated to advance to the Trust the monthly mortgage payments and pay the property taxes and hazard insurance to protect the Property, regardless of whether Schmeglar is making the his scheduled payments. (*Id.* 71, 73-74.) Mr. Bateman further testified that "[w]hat the certificate holders [i.e., the individual investors of the Trust] receive has

---

[8] Despite this argument made at the close of the trial, Schmeglar remarkably argues in his Brief that, "At no time during the trial was any theory posited that relieved Schmeglar of his payments of the note and mortgage. Those issues were not raised in pleadings, a pretrial order, or during the trial." (Schmeglar Br. at 18.) Even worse, Schmeglar makes the argument to support his criticism of the bankruptcy court for—as Schmeglar puts it—"putting issues to bed" that were not properly before the court. (*Id.*)

nothing to do with whether or not one specific mortgage that is in that pool is performing or not," and explained that "[p]ursuant to the PSA, when a loan is in default, the servicer has a legal obligation to pay to the master servicer and ultimately the trust payments … that [are] not paid." (*Id.* 70.) As to Schmeglar's Loan, Mr. Bateman testified that Schmeglar had defaulted on the Loan before Wells Fargo "initiate[d] the foreclosure proceedings," and since that time "[p]ayments were advanced by Wells Fargo as servicer to the master servicer and ultimately to the trust." (*Id.* 66, 72-73.)

Ms. Goaley-Pleggenkuhle similarly testified that Wells Fargo, as servicer, advanced the scheduled mortgage payments to the Trust when Schmeglar stopped making payments on his Loan, and that "December 1, 2010 was the last payment received by Mr. Schmeglar." (Goaley-Pleggenkuhle Dep. 44-45, 110, 113.) Further, Mr. Slack testified that in "July of 2011 we made a request to the document custodian holding the note and mortgage for the originals to be sent because the mortgage … had come into default," and that [b]ecause the loan was in default and we had to have the original documentation to move forward in foreclosure." (Slack Dep. 26:3-26:10, 28:24-29:7, 36:22-37:3.)

This testimony is consistent with the trial exhibits introduced at trial. The PSA provides that Wells Fargo, as servicer, shall advance an "amount equal to all Scheduled Payments … which were due on such … Mortgage Loans … which were delinquent …." (Compl. Ex. E § 5.01.) The Proof of Claim that Schmeglar introduced states that, as of the bankruptcy filing date, $16,800.48 of pre-petition fees, expenses and charges (including escrow advances) were due along with twenty-two pre-petition payments totaling $91,436.96. (Schmeglar Trial Ex. K at 1, 5-6.) Notably, the Proof of Claim is signed by an attorney, "under penalty of perjury that the information provided in this claim is true and correct to the best of [her] knowledge, information,

and reasonable belief," as the creditor's authorized agent. (*Id.* 3.) The Loss Mitigation Applications and the Escrow Account Disclosure Statements also prove that Wells Fargo advanced the property taxes and hazard insurance for the Property. (Defs.' Trial Ex. 9 at 2-3; Defs. Trial Ex. 11.)

Thus, all of the evidence demonstrates—and Schmeglar has admitted—that Wells Fargo advanced monthly mortgage payments to the Trust because Schmeglar defaulted on the Loan by his admitted failure to make those payments. Because Schmeglar does not and cannot establish that the bankruptcy court's finding in this regard was erroneous, not to mention "clearly erroneous," the Judgment should be affirmed.

>    **D.**    **The bankruptcy court's "finding" that Schmeglar had the opportunity to testify at trial but did not do so is not a factual finding requiring an evidentiary basis, and the record shows that he did have that opportunity.**

As explained above, the challenged "finding" that Schmeglar "had the opportunity to testify" is not a finding of fact with supporting "testimony or evidence." Rather, if anything, it is an evidentiary ruling related to Schmeglar's testimony at trial; and, as such, Schmeglar waived his challenge here by failing to raise an objection below. *See Matter of Maurice*, 21 F.3d at 771. Moreover, for the reasons set forth above, Schmeglar's claim that he was barred from testifying is simply belied by the record. Thus, here again, Schmeglar's challenge to the court's "finding" concerning his ability to testify at trial is misplaced, waived on appeal, and wrong in any event.

Thus, for all of these reasons, the four challenged findings are each support by sufficient and largely undisputed evidence, and none of the findings even come close to the "clear error" required to overturn them. Accordingly, the Judgment should be affirmed.

## <u>CONCLUSION</u>

For the reasons set forth above and those apparent in the Record, Defendants respectfully request that the Court affirm the bankruptcy court's Findings of Fact and Conclusions of Law and the Final Judgment.

Respectively Submitted,

Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems, Inc., and U.S. Bank, N.A. as Trustee for Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage Pass Through Certificates, Series 2005-5 (also named as U.S. Bank N.A., as Trustee For Credit Suisse First Boston, ARMT 2005-5)

By: _/s/ John C. Crees_ _____
     One of their attorneys

Jeffrey D. Pilgrim
John C. Crees
Pilgrim Christakis LLP
321 North Clark Street, 26th Floor
Chicago, Illinois 60654
Ph. (312) 939-0923
Fax (312) 939-0983

## <u>CERTIFICATION OF COMPLIANCE</u>

Undersigned counsel for Defendants-Appellees, hereby certifies as follows:

1. This brief complies with the type-volume limitations of Bank. R. Civ. P. Rule 8015(a)(7)(A) because it contains less than 6,863 words, excluding the parts of the brief exempted by Bank. R. Civ. P. Rule 8015(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Bank. R. Civ. P. Rule 8015(a)(5)/Local Rule 5.2, the type style requirements of Bank. R. Civ. P. Rule 8015(a)(6)/ Local Rule 5.2, and the requirements of Bank. R. Civ. P. Rule 8015/ Local Rule 5.2 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman type style in 12-point type size in the body of the brief and in 11-point type size in the footnotes.

/s/ John C. Crees   
John C. Crees

## CERTIFICATE OF SERVICE

John C. Crees, an attorney, certifies that on November 9, 2015, he electronically filed the foregoing **Response Brief of Defendants-Appellees** with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing and service a copy of the same to all counsel of record.


/s/ John C. Crees