LEMIRE SCHMEGLAR,

    Appellant,

  v.

WELLS FARGO BANK, N.A. et al,

    Appellees.

No. 15 CV 05094

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

LeMire Schmeglar obtained a mortgage loan to buy a home. Years later, he failed to make payments and the home was in foreclosure proceedings. Before a judicial foreclosure sale was ordered, Schmeglar filed for Chapter 11 bankruptcy. His confirmed Chapter 11 reorganization plan explained that Schmeglar disputed that U.S. Bank N.A. was the valid owner of the mortgage. Schmeglar said that he would not make payments on the mortgage note until the valid owner of the note was determined. He filed an interpleader action as an adversary proceeding to ascertain who owned the mortgage note and who was entitled to payment. Following trial, the bankruptcy court held that U.S. Bank, as trustee for Adjustable Rate Mortgage Trust 2005-5, owned the original note and therefore was entitled to payment. The court also held that Wells Fargo Bank, N.A., as the master servicer and servicer of Schmeglar's loan, was empowered to collect mortgage payments from Schmeglar.

Schmeglar appeals, arguing that the bankruptcy court's final judgment and findings of fact and conclusions of law were unsupported by the record and exceeded the scope of the case, as laid out in its pretrial orders.

For the following reasons, the judgment of the bankruptcy court is affirmed.

**I. Legal Standards**

In a bankruptcy appeal, bankruptcy court's factual findings are examined for clear error and its legal conclusions are examined de novo. *In re Marcus-Rehtmeyer*, 784 F.3d 430, 436 (7th Cir. 2015). Decisions entrusted by the bankruptcy code to the discretion of the bankruptcy court are reviewed for abuse of discretion, *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009), as is the court's modification or enforcement of a pretrial order. *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir. 1995).

**II. Background**

In 2005, LeMire Schmeglar obtained an $875,000 mortgage loan from PHM Financial Inc. to purchase a house at 2715 North Paulina Street in Chicago, Illinois.[1] In 2011, the mortgage was transferred to a mortgage-backed securities trust known under various names, including as the Adjustable Rate Mortgage Trust 2005-5 (or ARMT 2005-5). The Adjustable Rate Mortgage Trust 2005-5 was created pursuant to a Pooling and Servicing Agreement. Credit Suisse First Boston Mortgage Securities Corporation was the depositor who put the loans into the trust. The agreement also designated Wells Fargo as a servicer, charged with collecting

---

[1] Mortgage Electronic Registration Systems, Inc. was the nominee on the mortgage for PHM Financial.

payments from the loan borrowers and maintaining loan business records, and as the master servicer, with responsibility to accept payments from multiple servicers of loans in the trust's pool of loans and submit the payments to the trust. U.S. Bank N.A. was designated as trustee. [13-7] at 189–90, 197–98, 200–01.[2]

After Schmeglar failed to make payments on his loan, U.S. Bank initiated foreclosure proceedings. In September 2012, the Circuit Court of Cook County entered a judgment of foreclosure against Schmeglar and in favor of U.S. Bank. [13-4] at 194–200; [13-5] at 1–5. In October 2012, before a judicial foreclosure sale could take place, Schmeglar filed an individual Chapter 11 bankruptcy action in the Northern District of Illinois. *In re Schmeglar*, Case No. 12-BK-42283 (Bankr. N.D. Ill.). The reorganization plan, confirmed in 2013 and entered in 2014, explained that Schmeglar disputed the validity of U.S. Bank's lien and would not pay U.S. Bank on its asserted first mortgage until after the validity and priority of its lien was fully adjudicated. Contending that he was unable to determine who validly owned the mortgage and note, Schmeglar filed an interpleader action as an adversary proceeding to determine which party was entitled to his mortgage payments.[3] *Schmeglar v. PHM Financial, Inc. et al.*, Case No. 14-AP-00121 (Bankr. N.D. Ill.). That interpleader action is the subject of this appeal.

---

[2] Bracketed numbers refer to entries on the district court's docket.

[3] An adversary proceeding may be brought "to determine the validity, priority, or extent of a lien or other interest in property." Fed. R. Bankr. P. 7001(2). Federal Rule of Bankruptcy Procedure 7022 applies Federal Rule of Civil Procedure 22(a) to adversary proceedings.

3

Schmeglar's interpleader complaint asserted that many entities claimed ownership of the mortgage interest and demanded payment of the mortgage. [13-3] at 9–10. The complaint requested that the defendants "be required to interplead and litigate among themselves their claims to the mortgage and note," that the court "enter an order setting forth the proper recipients of the mortgage payments," and that Schmeglar "be allowed to present evidence as to the proper party it believes is the lienholder." [13-3] at 10, ¶¶ 56–58. Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems, U.S. Bank N.A., and the Adjustable Rate Mortgage Trust 2005-5 (under various names, including ARMT 2005-5 and Adjustable Rate Mortgage Pass Through Certificates, Series 2005-5) were named as defendants.[4] Schmeglar deposited mortgage payments into escrow pending resolution of the interpleader action.

A trial on the interpleader action was held in March 2015, and the sole witness was a Wells Fargo representative. The bankruptcy court entered its final judgment and findings of fact and conclusions of law on May 26, 2015,[5] deciding that the original note (which was indorsed in blank) was held by U.S. Bank as trustee for the Adjustable Rate Mortgage Trust 2005-5 and that, pursuant to the Pooling and Servicing Agreement that created the trust, Wells Fargo was both the

---

[4] PHM Financial and DLJ Mortgage Capital, Inc. were also named as defendants but were never served and never appeared in the case. They were dismissed by the bankruptcy court after trial. [13-5] at 68–69.

[5] The final judgment and findings of fact and conclusions of law were signed by the bankruptcy court on May 22, 2015 but not docketed until May 26, 2015. Therefore, Schmeglar's June 9, 2015 notice of appeal was timely. Fed. R. Bankr. P. 8002(a)(1).

4

"master servicer" and "servicer" and thus empowered to collect payment. *In re Schmeglar*, 531 B.R. 735, 737–38 (Bankr. N.D. Ill. 2015); [4-8] at 408–09. The final judgment also stated that none of the other defendants had any ownership interest or right to receive mortgage payments, and that Wells Fargo's advances to U.S. Bank in the amount of Schmeglar's mortgage payments did not excuse Schmeglar from making any of his mortgage payments during the period of those advances. [4-8] at 408–09.

Schmeglar now appeals the court's judgment and findings of fact and conclusions of law.

## III. Analysis

Schmeglar raises two questions on appeal: (1) whether the bankruptcy court's findings of fact and conclusions of law exceeded the scope of the case (as laid out in its pretrial orders), and (2) whether the bankruptcy court's findings of fact and conclusions of law were unsupported by the record.[6] Specifically, Schmeglar argues that the following findings and conclusions were unsupported by the record and were outside the scope of the court's pretrial orders: (1) that Schmeglar was in default on his mortgage; (2) that the trust owning the mortgage and note had multiple names; (3) that Wells Fargo was the servicer entitled to collect Schmeglar's mortgage payments; (4) that Wells Fargo's advancement of payment to U.S. Bank in

---

[6] Although not addressed in his briefs, Schmeglar's statement of issues on appeal lists as an issue whether the court erred in failing to specifically identify the holder of the note and mortgage, as sought in Schmeglar's interpleader complaint. [4] at 13. There was no error on that front. The bankruptcy court specifically found that U.S. Bank possessed the original note and was entitled to enforce the mortgage. *Schmeglar*, 531 B.R. at 738; [4-8] at 408.

the amount of Schmeglar's mortgage payments did not excuse Schmeglar's obligation to make mortgage payments during that period; and (5) that Schmeglar was given an opportunity to take the stand but did not do so and offered no evidence of any conflicting demands for the mortgage payments.

A. **Scope of the Case**

Schmeglar's "scope of the case" argument rests on comments made by the court in rulings and in hearings to the effect that the only relevant issue in this case was determining which party physically possessed the original mortgage note.[7] Schmeglar contends that these comments were pretrial orders narrowing the scope of the case to that issue alone, citing, *inter alia*, to *Wilson v. Kelkhoff*, 86 F.3d 1438 (7th Cir. 1996), for the proposition that a pretrial order supersedes the pleadings and establishes the issues to be considered at trial. *Wilson*, however, referred to entry of the final pretrial order; as in *Wilson*, the final pretrial order in this case was brief and did not exclude particular issues from trial. *Id.* at 1442 ("The order does include sufficient references to each of the . . . claims raised in the amended complaint that we cannot find the parties and the court intended to exclude any of them."); *see* [4-7] at 99–101. Schmeglar acknowledges in his reply brief that the final pretrial order is silent as to whether the issues for trial were to be narrowed. The bankruptcy court did emphasize throughout the adversary proceedings that the

---

[7] *See, e.g., In re Schmeglar*, 523 B.R. 119, 124 (Bankr. N.D. Ill. 2014) ("The [adversary] proceeding will be set for trial at which the primary (and perhaps sole) issue will be to establish and identify the party that presently holds physical possession of the original and authentic mortgage note and ascertain whether or not it is indorsed in blank.") (denying defendants' motion for judgment on the pleadings).

primary goal was to identify the possessor of the mortgage note, but the court also recognized at the outset that the nature of Schmeglar's reorganization plan and interpleader action required fully adjudicating the validity of U.S. Bank's purported lien and resolving any confusion for Schmeglar as to who was entitled to receive his mortgage payments. [13-6] at 1, 4–12. The bankruptcy court made clear that the interpleader action would be the vehicle for deciding who was entitled to Schmeglar's mortgage payment and who was not entitled to payment "all in one lawsuit," thereby resolving the issue left open by Schmeglar's reorganization plan. [13-6] at 1. The bankruptcy court also noted that, because Schmeglar's reorganization plan was confirmed in that court, it had the responsibility to both enforce and interpret the plan. [13-6] at 11.

The court addressed all these additional issues, which Schmeglar now complains were superfluous to determining ownership of the note, because they were raised by Schmeglar. He disputed the overall validity of the lien, including whether he had defaulted on his mortgage payments or was required to make the payments pursuant to his reorganization plan. Schmeglar continued to raise many of these arguments after trial, so it is unsurprising that the bankruptcy court addressed these issues in the findings of fact and conclusions of law. *See, e.g.,* [13-7] at 3–10, 15–17, 22–26, 218–24, 243–71. By repeatedly bringing these issues to the attention to the bankruptcy court Schmeglar cannot now complain that these issues were outside the scope of the case.

This interpleader action presented an unusual situation, in that the defendants (represented by the same counsel) did not appear to present competing claims over Schmeglar's mortgage payments or to disagree over the ownership of the mortgage and note (including Wells Fargo's ability to collect mortgage payments, as the loan servicer). Instead, Schmeglar advanced several arguments disputing the validity of the mortgage and note, including that: the defendants were each claiming ownership of the mortgage and note, that the mortgage and note were not properly transferred to the trust (e.g., because it had multiple names, only one of which was its "legal" name), and that Wells Fargo obviated the need for Schmeglar to make mortgage payments because it had advanced the amount of his unpaid mortgage payments to the trust, pursuant to its contractual obligations.

The bankruptcy court addressed Schmeglar's arguments in order to fully adjudicate the validity of the lien, so these issues were not outside the scope of the case.

**B.    Wells Fargo's Advances**

Early on in the proceedings, there was some confusion among the parties as to whether Wells Fargo, as the servicer, or U.S. Bank, as the trustee, controlled the foreclosure action and which entity could be entitled to payment. [13-6] at 7–8. The parties were also confused when they discovered that, since 2009, Wells Fargo (as servicer of the mortgage) had advanced payments to U.S. Bank, on behalf of the trust, in the amount of Schmeglar's unpaid mortgage payments. During the course of the adversary proceeding, Schmeglar reiterated his confusion about Wells Fargo's role in making these payments. As a result, the court permitted Schmeglar to take

targeted discovery on this issue. [5] at 12–13; [13-7] at 3–10, 15–17, 22–25. Schmeglar argued that Wells Fargo's advances to the trust satisfied Schmeglar's repayment obligations under the note and mortgage, thereby excusing his obligation to make mortgage payments that became due during that time.

The bankruptcy court ultimately concluded that Wells Fargo's advances were made pursuant to its contractual obligations under the trust agreement and could not be seen as excusing Schmeglar's failure to make timely mortgage payments. The Pooling and Servicing Agreement was admitted into evidence. The bankruptcy court's interpretation of the agreement and the parties' contractual obligations thereunder was appropriate because contract interpretation is a question of law for the court. *P&B Capital Grp., LLC v. RAB Performance Recoveries, LLC*, 9 N.Y.S.3d 515, 516 (2015).[8] During cross-examination, Schmeglar's counsel specifically elicited testimony from Wells Fargo's witness to explain how Wells Fargo was contractually obligated to advance delinquent mortgage payments to the trust and could initiate foreclosure proceedings on behalf of the trustee, U.S. Bank. [13-7] at 219–24, 228. On redirect, the witness explained that Wells Fargo would be entitled to reimbursement for its advances, if there were any foreclosure proceeds. [13-7] at 232–33. The bankruptcy court's conclusions were correct. The contract authorized Wells Fargo to advance delinquent payments, and there was no evidence that the servicer's advance released Schmeglar from his obligation to make payments.

---

[8] Schmeglar agreed that New York law governs the trust and the Pooling and Servicing Agreement. [13-5] at 50–51, ¶¶ 15–16.

By specifying U.S. Bank, as trustee, as the note owner and Wells Fargo as the entity contractually empowered to collect the mortgage payments on behalf of U.S. Bank, the bankruptcy court provided the relief that Schmeglar requested: clarification of the entities' roles and responsibilities.

## C. Schmeglar's Default

In its conclusions of law, the court stated that Schmeglar's admitted failure to make timely mortgage payments meant that he was in default under the terms of his mortgage. This limited reference to Schmeglar's default was made in the context of refuting Schmeglar's argument that Wells Fargo's advances to the trust somehow satisfied his mortgage repayment obligations and meant that he had never been in default. *See Schmeglar*, 531 B.R. at 739–40. The court's conclusion was supported by the terms of Schmeglar's mortgage note—which stated: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default," [13-3] at 36—and Schmeglar apparently acknowledged under oath that he had failed to timely pay his mortgage for four months. *See* [9] at 12–13; *see also* [13-6] at 2–3. The reference to Schmeglar's default was not included in the final judgment, which merely says that Wells Fargo's advances did not excuse Schmeglar from making any of his mortgage payments. [4-8] at 408–09. Despite Schmeglar's assertions to the contrary, the bankruptcy court expressly declined to wade into the pending state court foreclosure action and left the parties to resolve, pursuant to Schmeglar's reorganization plan, the issue of whether any mortgage payments remained

10

outstanding or were covered by Schmeglar's deposits in escrow. [13-7] at 267–72.[9] This conclusion was supported by the evidence and addressed Schmeglar's argument regarding the validity of his lien to U.S. Bank.

**D.  Trust Names**

During the interpleader action, Schmeglar contended that different names used for the trust put him at risk for liability to multiple parties. The issue of whether the trust had multiple "legal" names was also addressed by Schmeglar during cross-examination of Wells Fargo's witness ([13-7] at 224–29) and in Schmeglar's proposed findings of fact and conclusions of law. [4-8] at 45–46, ¶¶ 11, 13, 17; *id*. at 48, ¶ 9. Because the use of different names for the trust did not change the identity of the trustee, who held the note, the bankruptcy court concluded that determining which "legal" name applied to the trust was irrelevant to the validity of the lien against Schmeglar. *Schmeglar*, 531 B.R. at 740.

This conclusion comports with New York law. Express trusts (such as the trust created by the Pooling and Servicing Agreement) may hold property in their own name but cannot sue or take any other action except through a trustee. *See* N.Y. Est. Powers & Trusts Law § 7-2.1 (McKinney); *Ronald Henry Land Trust v. Sasmor*, 990 N.Y.S.2d 767, 768 (2014). Thus New York law, as applied to the trust here, means that the trust itself could not sue Schmeglar for mortgage payments, only its trustee, U.S. Bank. The bankruptcy court correctly found that the different

---

[9] In the appellate record, there are escrow reports from Schmeglar's counsel suggesting that arrearages were paid into the escrow account. [4-10] at 37, 144–47, 160–62.

names used by the trust did not affect the validity of the lien against Schmeglar. There was no evidence that the different names for the trust meant that there were separate entities entitled to sue him for the mortgage payments (and no authority for such a proposition). And there was no evidence of any attempt to expose Schmeglar to duplicative mortgage payments.

### E.     Schmeglar's Failure to Offer Evidence or Testimony

Schmeglar also appeals the court's factual finding that Schmeglar had the opportunity but declined to testify and offer other evidence that he had received confusing demands for payment. There was no error. The finding was an accurate observation of what occurred at trial and provided context for the court's other factual findings.

Before trial, defendants moved in limine to bar Schmeglar's testimony. The motion was granted because Schmeglar's counsel stated that he did not intend to call Schmeglar as a witness, since Schmeglar could not offer relevant evidence as to who held the mortgage and note. [13-7] at 172. Schmeglar's counsel also agreed that none of Schmeglar's exhibits contradicted the defendants' exhibits. *Id.* at 171–73. The court, however, specifically permitted Schmeglar to offer rebuttal testimony, stating that it was "not intending to bar [Schmeglar] from participating in the case" and that the court was "not barring all testimony." *Id.* at 175–77. At trial, the sole witness was a representative of Wells Fargo. Schmeglar's counsel offered no rebuttal case or testimony when offered the opportunity. *Id.* at 233–34. The fact that Schmeglar offered no evidence on this point provided context for the court's decision and was supported by the record.

## IV. Conclusion

The judgment of the bankruptcy court is affirmed.

ENTER:

                                                                               _____

                                                                               Manish S. Shah
                                                                               United States District Judge

Date: 3/15/16